**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

GARY L. DAVIS,                          :
                                        :        Civil Action No. 04-2455 (WGB)
          Petitioner,          :
                                        :
          v.                            :        **OPINION**
                                        :
KATHRYN MCFARLAND, et al.,     :
                                        :
          Respondents.         :


**APPEARANCES:**

Petitioner pro se                   Counsel for Respondents
Gary L. Davis                       Christopher W. Hsieh, Esq.
South Woods State Prison            Ofc. of Passaic Co. Prosec.
215 Burlington Rd South             401 Grand Street
Bridgeton, NJ 08302                 Patterson, NJ 07505

**WALLS**, District Judge

     Petitioner Gary L. Davis, a prisoner currently confined at

South Woods State Prison in Bridgeton, New Jersey, has submitted

a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  The respondents are Kathryn McFarland and the Attorney

General of New Jersey.

     For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background[1]

On September 16, 1992, at approximately 11:00 p.m.,
Elizabeth Remeres stopped the car she was driving so she could
make a phone call at a phone booth in the City of Paterson.
Melissa Navarez was a front seat passenger, and she stayed inside
the car while Ms. Remeres made her phone call.  (4T38-39,79.)
Ms. Remeres left her purse in the vehicle.  (4T43.)

While Ms. Remeres was using the phone, she was approached by
an African-American male dressed in a purple tank top and dressy
pants and dressy shoes.  (4T40-41, 85, 94.)  The man had a
newspaper wrapped around his hand; he asked Ms. Remeres if she
was going to be long.  (4T86, 101.)  Ms. Remeres feared, in light
of a prior robbery, that she was going to be robbed.  (4T86-87.)
When the man dropped the newspaper, Ms. Remeres was able to
observe a gun in his hand  (4T87.)  She screamed to Ms. Navarez
to get away from the car as the armed man opened the driver side
door and entered the vehicle.  (4T40, 88.)

The man pointed his gun at Ms. Navarez and said to her,
"give me the keys from the car or I'll kill you."  (4T41-42.)
Ms. Navarez gave the man the gun and then left the vehicle.
(4T43.)

------

[1] The factual background statement is derived from the
transcripts of trial testimony.

2

Ms. Navarez and Ms. Remeres ran from the scene, toward their home.  (4T44, 89.)  The man ran in the same direction.  (4T44.)  Ms. Navarez stated for the first time at trial that she had observed that the man was carrying Ms. Remeres's purse in his hand.  (4T47, 73-74.)  After the man turned, Ms. Navarez and Ms. Remeres returned to the phone booth to call the police, but instead flagged down a passing police car.  (4T45.)  They provided a description to the police officer, who radioed the information that the robbery suspect was a black male, wearing a purple sleeveless T-shirt and gray pants.  (5T48.)  The officer also radioed the information about the direction the man had fled.  (5T48.)

Housing Police Officers Jose Valentin and Sweeney Melendez were on patrol in the area and responded to the call.  (5T66-67.)  Officer Valentin observed a man wearing a sleeveless purple T-shirt with grey pants, who started running when he saw the police car.  (5T70-71.)  After losing sight of the suspect, the officers decided to search back yards in the neighborhood.  One homeowner unlocked a gate, allowing the officers into his yard.  (5T72-73.)  The Petitioner was located hiding inside of a shed in the rear yard and was arrested.  (5T74.)  The area was also searched for the weapon and Ms. Remeres's purse.  (5T75.)  Another officer, Lieutenant Medina, recovered the purse nearby, on a sidewalk; the wallet and weapon were not found.  (5T76, 106-07.)  Some money

3

was missing from the purse.  (5T42.)  No money was found on Petitioner when he was arrested.  (5T92.)

Within about half an hour after the initial radio call, Officers Valentin and Melendez returned the suspect to the corner where the victims were waiting, for a show-up identification; the suspect remained in the police car.  (4T47-48, 95-96; 5T77.)  Ms. Navarez then identified Petitioner as the man who had pointed the gun at her earlier.  (4T49.)  Also, according to a police report, Ms. Navarez described the gun as being black with a long barrel. (4T71-72.)  Another police report, based upon a statement made a few days later, reflected that Ms. Navarez described the gun as a long, chrome shiny gun.  (4T75-76.)  Ms. Navarez was never asked later to identify the man who had pointed the gun at her through the use of a photo array or line-up identification.  (4T59.)  Ms. Navarez testified that she never saw the man's face clearly. (4T59.)

Ms. Remeres also identified the man in the police car as the man involved in the incident at the phone booth.  (4T96.)  She also was never asked later to identify the man involved through means of a photo array or line-up identification.  (5T40.)  Also, when talking with the police, Ms. Remeres checked inside her car and determined that her purse was missing.  (4T98.)  At trial, Ms. Remeres identified Petitioner as the man involved in the incident at the phone booth.  (4T100.)

4

B.   Procedural History

On October 29, 1992, Petitioner was charged with second degree burglary of an automobile, two counts of armed robbery (first degree), fourth degree aggravated assault, terroristic threat (third degree), possession of a firearm with purpose to use it unlawfully (second degree), and unlawful possession of a handgun (third degree).

On July 24, 1995, the trial court denied Petitioner's motion to dismiss the indictment on the ground that his right to a speedy trial had been violated.

Following a jury trial, defendant was convicted of the burglary and terroristic threat charges.  He was found guilty of two counts of lesser included second degree robbery following acquittal on the two first degree robbery charges.  He was also acquitted of the aggravated assault charge and both weapon charges.

The trial court sentenced Petitioner to a ten-year prison term with five years of parole ineligibility for the burglary conviction, and a concurrent extended term as a persistent offender of twenty years with ten years of parole ineligibility for the robbery of Elizabeth Remeres.  The trial judge also imposed a consecutive term of ten years with five years of parole ineligibility for the robbery of Melissa Navarez, with which the terroristic threat conviction was merged.  Thus, the aggregate

5

sentence was thirty years with fifteen years parole ineligibility.

Petitioner directly appealed his conviction.  On November 12, 1997, the Appellate Division affirmed.  (Ra10.)  On September 11, 1998, the Supreme Court of New Jersey denied certification. (Ra16.)

Thereafter, Petitioner filed in the trial court a motion for post-conviction relief.  On February 23, 2001, the trial court held a non-evidentiary hearing and denied relief in an oral opinion.  On July 11, 2003, the Appellate Division affirmed. (Ra18.)  On October 29, 2003, the Supreme Court of New Jersey denied certification.  (Ra24.)  This Petition timely followed.

Respondents have answered, asserting that the claims must be denied on the merits and that certain claims are procedurally barred.  Petitioner has not filed a reply in support of the Petition.  This matter is now ready for disposition.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

8

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002)).

Alternatively, "[a]n application for a writ of habeas corpus
may be denied on the merits, notwithstanding the failure of the
applicant to exhaust the remedies available in the courts of the
State." 28 U.S.C. § 2254(b)(2). See also Lambert v. Blackwell,
387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d
355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers. Estelle
v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.
519, 520 (1972). A pro se habeas petition and any supporting
submissions must be construed liberally and with a measure of
tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);
Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);
United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.   Speedy Trial (Ground Three)

Petitioner contends that the indictment should have been
dismissed for violation of his right to a speedy trial. The
Appellate Division rejected this claim on direct appeal:

> The three-year hiatus between indictment and trial
> was remarkable. Nevertheless, defendant, who was
> imprisoned on another offense at the time, made no
> adequate showing of prejudice from the delay. None was

offered at the time of the pre-trial motion to dismiss,
three months before trial.  At trial, when counsel
twice sought relief by reason of the unavailability of
two or three defense witnesses because of the passage
of so much time, the showing that was made as to how
those witnesses would have assisted in the defense was
insufficient, and no other basis was apparent.  Thus,
defendant failed to meet the standards for dismissal
based upon a violation of his right to a speedy trial.
See State v. Szima, 70 N.J. 196, 200-02, cert. denied,
429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976).

(Ra12-13.)

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth four guidelines to determine whether the Sixth Amendment's guarantee of a speedy trial has been violated:  (1) the length of the delay; (2) the reason for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant.  See id. at 530; see also United States v. Dent, 149 F.3d 180, 184 (3d Cir. 1998), cert. denied, Dent v. United States, 525 U.S. 1085 (1999).

The state court based its denial of Petitioner's claim on his failure to establish prejudice.  At the pre-trial motion, the only prejudice alleged by Petitioner's counsel was the theoretical denial of parole from an unrelated sentence Petitioner was then serving, based upon the existence of the pending indictment.  (2T.)  At trial, Petitioner's counsel

advised the court that two of Petitioner's witnesses had died and that others could not be located.  Petitioner's counsel did not advise the court as to the anticipated testimony of most of these witnesses; with respect to the others, the court found the testimony not material.[2]  (3T6-10; 5T138-139.)

The state courts correctly identified the applicable law.[3] The decision of the Appellate Division was not contrary to nor an unreasonable application of <u>Barker v. Wingo</u>.  Nor was the Appellate Division decision based on an unreasonable determination of the facts in light of the evidence presented. Indeed, as is evident from the attachments to Petitioner's brief in support of his subsequent motion for post-conviction relief, in which he asserted ineffective assistance of counsel in connection with the speedy-trial motion, it was not until July 16, 1995, approximately one week before the hearing on that motion, that he first mentioned the missing or deceased witnesses.  (Ex. C. at DA93.)  In a January 1993 letter to his counsel, rather than mentioning these witnesses, he stated,

---

[2] The proffered testimony would have been (1) that a Tammy Morgan had a pre-arranged date with Petitioner on the evening of the offense, but he was arrested before he could meet her, and (2) that the landlord of the alleged victims would testify that they had left in the middle of the night without paying the rent or fulfilling other tenant obligations, which Petitioner contended would challenge the credibility of the victims.  (3T8-10.)

[3] <u>Szima</u> was decided based upon <u>Barker v. Wingo</u>.

"Where are the ohter [sic] witnesses, somebody had to, see something." (Ex. C. at DA87.) Only in connection with his motion for post-conviction relief did Petitioner put forth the explanation that the missing witnesses would have testified that the victims were involved in a drug deal "gone bad" and that they yelled "robbery" when they did not receive their drugs. (Ex. D. at 200-202.)

Petitioner is not entitled to relief on this claim.

B.   Jury Instructions (Grounds Five, Six, Nine)

Petitioner argues that the jury instructions were deficient in that the trial court gave an inadequate instruction on identification, failed to provide adequate instructions on the meaning of "knowingly,", and failed to instruct the jury on the lesser included offense of theft with regard to the charge of robbery of Elizabeth Remeres.

Petitioner first raised these issues in his motion for post-conviction relief. (Ex. C.) The Appellate Division found these claims procedurally barred, as they should have been raised on direct appeal.

> We note initially that the issues raised in the pro se filing which asserted errors on the part of the trial court that led to the convictions cannot properly be raised on an application for post-conviction relief. Those issues were either raised and disposed of in the direct appeal, or could have been, and are therefore barred. See R. 3:22-4.

(Ra22.)

12

> A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d Cir. 1996)]. Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

On habeas review of state prisoner claims, a federal court "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Coleman, 501 U.S. at 734-35 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).[4] Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court. James v. Kentucky, 466 U.S. 341, 348-351 (1984). See also Lee v. Kemna, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of 'firmly established and regularly followed' state rules ... will be

---

[4] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test. See United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 440 (3d Cir. 1982).

13

adequate to foreclose review of a federal claim." (citations omitted)).  Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.  See Coleman, 501 U.S. at 752 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation.  Coleman, 501 U.S. at 754.  Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard.  Murray at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'"  Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  In the context of an ineffective assistance claim, the

14

Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Carrier</u>, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him." <u>Werts</u>, 228 F.3d at 193 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995)).

Here, the State courts determined that Petitioner's jury-instruction claims were barred under New Jersey Court Rule 3:22-4, which provides:

> Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceed; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

Although Petitioner alleges that he received ineffective assistance of both trial and appellate counsel, the Appellate Division rejected those claims and this Court agrees, <u>infra</u>. Thus, Petitioner cannot establish cause for his procedural default.  Nor has Petitioner presented evidence to this Court establishing that failure to consider the claim would result in a miscarriage of justice.  Thus, this Court is bound by the state court's application of its procedural bar and cannot review Petitioner's claims regarding the jury instructions.  Petitioner is not entitled to relief on these claims.

C.   <u>Sufficiency of Evidence (Grounds Two, Eight)</u>

Petitioner contends that his motion for acquittal should have been granted with respect to the conviction for robbery of Elizabeth Remeres, because there was no evidence of threat.  The Appellate Division summarily denied this claim, on direct appeal, as being "without merit."  (Ra11.)

A claim that the jury's verdict was against the weight of the evidence raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law."

16

<u>Jackson</u>, 443 U.S. at 324, n.16.   <u>See also</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1059 (1998).   As noted above, state court factual determinations are presumed to be correct.   <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 186 (3d Cir. 2000).

> Under New Jersey law:
>
> A.   A person is guilty of robbery if, in the course of committing a theft, he:
>     (1) Inflicts bodily injury or uses force upon another; or
>     (2) Threatens another with or purposely puts him in fear of immediately bodily injury; or
>     (3) Contends or threatens immediately to commit any crime of the first or second degree.
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

N.J.S.A. 2C:15-1.

At trial, Ms. Remeres testified that she became frightened when Petitioner approached her with a newspaper wrapped around his hand, that she saw him throw away the newspaper, exposing the gun, that she screamed to Ms. Navarez to get out of the car, and that she and Ms. Navarez ran from the scene with Petitioner giving chase.  (4T87-93.)  This testimony adequately establishes that Petitioner threatened Ms. Remeres or put her in fear of immediate bodily injury.  Petitioner is not entitled to relief on this claim.

17

D.   <u>Excessive Sentence (Ground Four)</u>

Petitioner contends that the trial court should not have imposed consecutive, rather than concurrent, sentences.

The Appellate Division rejected this claim on appeal of the denial of post-conviction relief.

> [A] claim that a sentence is illegal may always be raised.  We discern no merit in defendant's claim in that regard, however.

(Ra22.)

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  <u>See</u> <u>Grecco v. O'Lone</u>, 661, F.Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  <u>See</u> <u>Pringle v. Court of Common Pleas</u>, 744 F.2d 297, 300 (3d Cir. 1984).  <u>See also</u> 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  <u>Ewing v. California</u>, 538 U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has identified three factors that may be relevant to a determination

of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment:  "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  Solem v. Helm, 463 U.S. 277, 292 (1983).  More recently, Justice Kennedy has explained that Solem does not mandate comparative analysis within and between jurisdictions, see Harmelin v. Michigan, 501 U.S. 957, 1004-05 (Kennedy, J., concurring in part and concurring in judgment), and he has identified four principles of proportionality review--"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"--that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," id. at 1001 (citation omitted) quoted with approval in Ewing, 538 U.S. at 23.

Petitioner's claim appears to be based solely on violation of state law.  (Ex. C at 57-60.)  To the extent it can be construed as having raised a federal claim, Petitioner has failed to establish that imposition of consecutive sentences for these crimes against two different individuals violates any federal

constitutional limitation, including the Eighth Amendment.
Petitioner is not entitled to relief on this claim.

E.   Ineffective Assistance of Counsel (Grounds One, Seven, Ten)

    1.   Trial Counsel

Petitioner contends that trial counsel provided ineffective
assistance by failing to conduct an independent investigation,
failing to contact defense witnesses, failing to impeach a victim
with her prior testimony, failing to request a Wade hearing, and
failing to make timely objections to preserve issues for appeal.

Petitioner argues that trial counsel was ineffective in
failing to object to damaging unresponsive answers, leading
questions, and inadmissible hearsay and testimony.  (Ex. A at 19-
25.)  On direct appeal, the Appellate Division rejected this
claim:

> One aspect of defendant's inadequate
> representation issue can be fully appraised on the
> record before us, however.  After reviewing the trial
> record, we do not regard trial counsel's performance
> relative to the testimony of the State's witnesses to
> have been deficient.  There is no basis for defendant's
> argument that the quality of representation in this
> respect was inadequate or ineffective by the standards
> of Strickland v. Washington, 466 U.S. 668,687, ... as
> amplified in United States v. Cronic, 466 U.S. 648, ...
> and adopted in State v. Fritz, 105 N.J. 42, 58 (1987).

(Ra12.)

Petitioner raised his other challenges to the effectiveness
of trial counsel in his motion for post-conviction relief.  (Ex.

20

C.)  The trial court denied relief without an evidentiary

hearing.  The Appellate Division affirmed.

> [T]he trial judge determined that defendant had
> failed to make a prima facie showing that the
> performance of either trial counsel or counsel on the
> direct appeal had fallen short of the first qualitative
> standard of Strickland v. Washington, 466 U.S. 668,
> 687-88 ... (1984); see also State v. Fritz, 105 N.J.
> 42, 58 (1987), or that such shortcomings as may have
> occurred had a demonstrable effect on the outcome of
> the trial, see Strickland, supra, 466 U.S. at 694, ...;
> Fritz, supra, 105 N.J. at 58, i.e., the second--
> causative--standard.
> ...
> As for the remaining issues, we have studied the
> record of the matter in the light of the arguments
> advanced by the parties.  Applying pertinent legal
> standards, we conclude that the trial court's rationale
> for denying defendant's petition without an evidentiary
> hearing was substantially correct.  Defendant has
> framed general assertions of attorney inadequacy, but
> has made no persuasive, particularized showing that
> either trial counsel or appellate counsel were
> deficient in the Strickland and Fritz first-prong
> senses or that any choices or omissions they made
> likely engendered a result that would otherwise not
> have been reached.

(Ra21-23.)

The Counsel Clause of the Sixth Amendment provides that a

criminal defendant "shall enjoy the right ... to have the

Assistance of Counsel for his defence."  U.S. Const. amend. VI.

The right to counsel is "the right to effective assistance of

counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)

(emphasis added).

To prevail on a claim of ineffective assistance of counsel,

a habeas petitioner must show both that his counsel's performance

fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  <u>Id.</u> at 695.

The performance and prejudice prongs of <u>Strickland</u> may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  <u>Id.</u> at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  <u>Id.</u> at 690-

22

91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The state courts correctly identified the applicable federal law.  The Appellate Division's decision was neither contrary to nor an unreasonable application of Strickland.  Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to relief on this claim.

    2.  Appellate Counsel

Petitioner contends that appellate counsel failed to provide effective assistance by failing to address the speedy trial issue, the identification procedures, the jury instructions, and the excessive sentence.  As noted above, this claim was rejected by the Appellate Division.  (Ra 21-23.)

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every

nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

As noted above, with respect to the claim of ineffective assistance of trial counsel, the state court correctly determined the applicable federal law.  The state court's decision that appellate counsel was not ineffective was neither contrary to nor an unreasonable application of Strickland.  Nor was the state court decision based on an unreasonable determination of the facts in light of the evidence presented.

Petitioner has failed to demonstrate, for example, the prejudice prong of appellate counsel's failure to raise the claim that trial counsel should have requested a Wade[5] hearing to challenge the victims' identification of him as the one who robbed them.

An accused is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable

---

[5] United States v. Wade, 388 U.S. 218 (1967) (where an accused was not represented by counsel in post-indictment line-up identification procedure, accused is entitled to hearing to determine whether identification procedure was so tainted that in-court identification should be suppressed).

24

identifications elicited through unnecessarily suggestive

identification procedures.  See generally Manson v. Brathwaite,

432 U.S. 98 (1977) and cases cited therein.

> [R]eliability is the linchpin in determining the
> admissibility of identification testimony ... .  The
> factors to be considered ... include the opportunity of
> the witness to view the criminal at the time of the
> crime, the witness' degree of attention, the accuracy
> of his prior description of the criminal, the level of
> certainty demonstrated at the confrontation, and the
> time between the crime and the confrontation.  Against
> these factors is to be weighed the corrupting effect of
> the suggestive identification itself.

Manson, 432 U.S. at 114.  See also Simmons v. United States, 390

U.S. 377 (1968) (der process prohibits in-court identification if

pre-trial identification procedure is "so impermissibly

suggestive as to give rise to a very substantial likelihood of

irreparable misidentification").

An "on-scene" or "show-up" identification is one in which

the suspect is apprehended at or near the scene and is returned

to it immediately where the victim/witness may make an

identification or one in which only one suspect is shown to the

victim/witness at a later time.  In Neil v. Biggers, 409 U.S.

188, 198 (1972), the Supreme Court held that the "admission of

evidence of a showup without more does not violate due process."

Although a show-up identification generally is considered

more suggestive than a line-up, see Stovall v. Denno, 388 U.S.

293, 302 (1967), overruled on other grounds, Griffith v.

Kentucky, 479 U.S. 314 (1987), a number of Circuit Courts of

Appeals, including the Third Circuit Court of Appeals, have held show-up identifications admissible.

> Immediate show-ups can serve ... important interests. For example, show-ups allow identification before the suspect has altered his appearance and while the witness' memory is fresh.  ...  In our view, such considerations will justify a show-up in a limited number of circumstances, such as where the police apprehend a person immediately after the crime and in close proximity to the scene.

United States v. Funches, 84 F.3d 249, 254 (7th Cir. 1996) (citations omitted).  See also U.S. v. Watson, 76 F.3d 4, 6 (1st Cir.), cert. denied, 517 U.S. 1239 (1996); Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987); United States v. Gaines, 450 F.2d 186, 197 (3d Cir. 1971) (holding that a show-up conducted without counsel was justified by "the fact that the eye-witness might have quickly departed, and the considerations of reliability inhering in an immediate identification"), cert. denied, 405 U.S. 927 (1972).

Petitioner has failed to establish either the performance or prejudice prongs of the Strickland test with respect to this claim.  The show-up identifications took place within half an hour of the crime, the witnesses appeared to be certain of their identifications, Petitioner was apprehended in the neighborhood of the crimes, and Petitioner was wearing the clothes described by the witnesses.  The show-up identifications were not so unreliable as not to be admissible.  To cast doubt on the accuracy of the identifications, trial counsel highlighted the

emotional states of the victims, the fact that although money was missing from the purse no money was found on Petitioner at his arrest, and the fact that Petitioner was not taken out of the police car at the time of the identification.  There was no basis for appellate counsel to raise this issue.  The other issues mentioned by Petitioner are equally meritless.

Petitioner is not entitled to relief on this claim.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


                                  /S/ WILLIAM G. BASSLER
                                    William G. Bassler
                              Senior United States District Judge

Dated: 30 May 2006